## DeCheck v. Clancy

*Rosen & Rosen* and *David Roth*, for plaintiff.

*John M. Stoner & Sons* and *Warren O. MacLean*, for defendant.

O'TOOLE, J., March 5, 1945.—This is an action in ejectment. The real estate involved is a small residence property. Both parties claim title through one Innocenz Kunkler. In 1934 Innocenz Kunkler because of failing health retired to the Knights of St. George Home at Wellsburg, West Virginia, where he remained as a patient until his death in 1939. On retiring he placed his affairs in the hands of a young friend, John Davis. Included in Kunkler's estate at the time was the property involved. Davis leased the property to Clancy, who went into possession. Thereafter Davis advised Kunkler that Clancy was interested in purchasing the property and received from Kunkler the following written authorization:

"Dear Mr. Davis:

"I hereby authorize you to sell that property on Manilla avenue, Greentree borough, Pennsylvania, as soon as you find a suitable purchaser.

(sgd.) "INNOCENZ KUNKLER."

Negotiations between Davis and Clancy continued until the property was sold to Clancy, who paid Davis $100 and received the following writing:

"April 14, 1937.

"This will acknowledge receipt of $100 from Mr. John Clancy in part payment of ½ of the purchase price of $1,900 as agreed by Mr. Innocenz Kunkler and John Clancy for the purchase of the Kunkler property on Manilla avenue, Greentree borough.

(sgd.) "JOHN W. DAVIS for
INNOCENZ KUNKLER."

Four months later Clancy paid an additional $900 and received another receipt. This money as well as a subsequent payment was transmitted by Davis to Kunkler.

Clancy has been in possession since 1934, first under the lease and subsequently under the sale. During that time he has made considerable repairs and improvements, the detailed description of which are not here necessary. But from the testimony the fact appears that he took an uninhabitable hovel and made it a home.

In 1939 DeCheck, the plaintiff, having definite knowledge that Clancy had bought the property and was in possession, went to the Knights of St. George Home and induced Kunkler to give him a deed to the property. There was testimony that he had agreed to pay Kunkler $2,000, but the consideration recited in the deed was $10, and DeCheck admits this is all he ever paid Kunkler. Kunkler at the time of conveyance to DeCheck was so reduced that he had to sign the deed by mark. He died two days later.

In this action DeCheck pleaded the deed, Clancy pleaded the sale. The jury found for Clancy and DeCheck moves for judgment n. o. v. and for a new trial. Both motions will be refused.

It is not necessary for us to decide whether the writings introduced in evidence, the authorization to Davis, and the descriptive receipt given by Davis are sufficient to take the case out of the statute of frauds. The case was not tried on that theory and we believe there is enough in the evidence to sustain the judgment without the writings.

If instead of an action of ejectment by DeCheck against Clancy this had been a bill for specific performance by Clancy against Kunkler or his estate, the vendee Clancy undoubtedly would have prevailed: Tetlow's Estate, 321 Pa. 305. There are no reasons why the same considerations of justice and equity which ruled Tetlow's Estate should not control here.

It is not without significance that the provision of the English statute invalidating parol sales of real estate is not included in our Pennsylvania statute. The Act of March 21, 1772, 1 Sm. L. 389, 33 PS §1, pro-

vides that estates created by parol shall be estates at will only. But from the early days our appellate courts have acted on the idea that the statute of frauds was intended to prevent frauds and not to shield them. Thus when equity required it our courts have recognized and enforced parol sales of real estate and have sustained the title of the vendee therein. In the early cases certain conditions were held to be essential to take the creation of an estate out of the provisions of the statute. Generally they were as recited in Hart et al. v. Carroll, 85 Pa. 508 (syllabus):

"In order to take a parol contract for the sale of lands out of the operation of the Statute of Frauds its terms must be shown by full, complete, satisfactory and indubitable proof. The evidence must define the boundaries and indicate the quantity of land. It must fix the amount of the consideration. It must establish the fact that possession was taken in pursuance of the contract, and at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained. And it must show performance or part performance by the vendee which could not be compensated in damages and such as would make rescission inequitable and unjust."

This law has been made by the courts. The statute does not provide the exception recognized, nor does it define the conditions which permit the exception. The conditions are based on common sense and the desire of the courts to prevent the statute being made a means of fraud or oppression.

In the case before us there was adequate proof of the terms of the oral contract. In fact they were not disputed, nor was there any dispute about the identity and description of the land involved.

However, it is strongly contended by plaintiff that as defendant had been in possession under lease prior to the sale he did not take possession pursuant to the sale and at the time thereof. But, as pointed out above,

these conditions were not arrived at arbitrarily but on the basis of common sense. Thus in this case if Clancy at the time of the sale had moved his furniture and family out into the street and had immediately moved them back onto the real estate the condition emphasized by plaintiff would have been met. To base title to real estate on a performance so idle and purposeless would be ridiculous. Nor was it required in Tetlow's Estate, supra, where the successful vendee had been in possession as tenant under a lease without interruption of possession at the time of the sale.

Not only was Clancy's possession notorious, it was actually known to plaintiff, as was the sale under which it was held. Further, it was "exclusive, continuous and maintained" from 1934 to the present.

There was substantial performance by Clancy. He paid $1,100 on a $1,900 contract and had made repairs and improvements worth $400. On this point plaintiff urges that since defendant made no improvements for which he could not be compensated in damages his estate is defeated by the statute. But again plaintiff is met by Tetlow's Estate, supra, in which case the vendee made neither repairs nor improvements, and while there were alterations in the building they were made by the vendor before the sale.

As against this performance on the part of defendant we have the fact that plaintiff, with full knowledge of defendant's rights, induced a dying old man to give him a deed for $10. This feature of the case alone would be sufficient to induce us to stretch to the limit the traditional policy of our appellate courts to prevent the statute of frauds being used as a means of overreaching an injustice.

The only additional error assigned is the mention by the court of the historical background of the statute of frauds. This animadversion could just as well have been omitted from the charge, but neither party was harmed by it, nor was exception taken to it. Motions refused.